**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellant,**

v.

**Billy Vance BOND, Appellee.**

No. 2–96–310–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 23, 1997.

John C. West, Jr., Chief of Legal Services, Shannon M. Fitzpatrick, Janette Lorie Ansolabehere, Asst. Gen. Counsel, Phyllis Waldrep Cranz, Fort Worth, for and on Behalf of John C. West, Jr.

Jim J. Hatcher, Henry, Hatcher & Schiller, P.C., Gainesville, for Appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

RICHARDS, Justice.

### Introduction

The Texas Department of Public Safety (DPS) appeals from a district court order that reversed an administrative decision upholding the suspension of appellee Billy Vance Bond's driver's license. In five points, DPS contends that the district court erred as a matter of law when it (1) held that it had subject matter jurisdiction over Bond's appeal from the administrative court's decision because Bond did not properly serve DPS with his petition for appeal and therefore did not invoke the reviewing court's jurisdiction, (2) impliedly found that the administrative court improperly admitted the arresting officer's testimony concerning the circumstances of Bond's initial traffic stop, (3) impliedly found that DPS failed to prove the required elements set out in sections 724.042(1) and 724.042(2) of the Texas Transportation Code, (4) impliedly found that DPS is required to

prove that the arresting trooper complied with section 724.032(c) of the Texas Transportation Code, and (5) impliedly found that Bond provided a breath specimen at the scene of the stop after his arrest in compliance with chapter 724 of the Texas Transportation Code. Because we conclude that the district court's jurisdiction was properly invoked, that the district court erred in overruling the administrative law judge's decision, and that the breath specimen provided by Bond did not comply with chapter 724 of the Texas Transportation Code, we reverse and render judgment for DPS.

### Summary of Facts

On April 27, 1996, while on patrol, Officer Belva McClinton of the Gainesville, Texas Police Department observed Bond driving erratically. McClinton noticed Bond's truck speed up and slow down several times and swerve from left to right. When McClinton stopped Bond, she detected a strong odor of alcohol on his breath. She then called Trooper Dudley Ivie of DPS to assist her with conducting some field sobriety tests. Ivie observed that Bond could not balance himself during the one-leg stand test and that he had to use his arms for balance during the walk and turn test. Ivie also noted that Bond had a strong odor of alcohol on his breath and that his eyes were dilated.

A few moments later State Trooper Kameron Pierce arrived at the scene and performed an intoximeter test on Bond. Ivie testified that the intoximeter is a portable intoxilyzer used during roadside sobriety testing. Based on the results of the field sobriety tests and the intoximeter test, Ivie arrested Bond for driving while intoxicated (DWI). Ivie then took Bond to the Cooke County Sheriff's Department, gave him the required statutory warnings,[1] and asked him to submit to a breath test. Bond refused to submit to the breath test and refused to sign a form indicating his refusal.

Following Bond's refusal to provide a breath specimen, DPS issued a notice of suspension of Bond's driver's license in ac-

---

1. Those warnings are found in section 724.015 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.015 (Vernon Supp.1997).

cordance with section 724.035 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.035 (Vernon Supp.1997). Bond requested a hearing under section 724.041 of the Texas Transportation Code, which was held on June 5, 1996, by telephonic conference with Administrative Law Judge Tanya Cooper. *See* TEX. TRANSP. CODE ANN. § 724.041 (Vernon Supp.1997). At the hearing, Bond's attorney argued that DPS had failed to prove the required issues under section 724.042 of the Transportation Code, including whether reasonable suspicion or probable cause existed to stop or arrest Bond, whether probable cause existed that Bond was driving or in actual control of a motor vehicle in a public place while intoxicated, whether Bond was placed under arrest and asked to give a breath specimen, and whether Bond refused. *See* TEX. TRANSP. CODE ANN. § 724.042 (Vernon Supp.1997). Bond's attorney alleged that the only evidence that could possibly substantiate these issues was hearsay and therefore not competent evidence.

The administrative court found by a preponderance of the evidence that DPS had met its burden of proof on all required issues under section 724.042 and sustained the suspension of Bond's driver's license for a period of 90 days. *See* TEX. TRANSP CODE ANN. § 724.043 (Vernon Supp.1997). The findings of the administrative law judge were as follows:

(1) On April 27, 1996, reasonable suspicion to stop Bond existed based on Officer McClinton's observations.

(2) On the same date, probable cause existed that, Bond was operating a motor vehicle in a public place while intoxicated based on the observations of McClinton and Ivie and the field sobriety tests, including the intoximeter test. Thus, probable cause to arrest Bond existed.

(3) Bond was placed under arrest and was properly asked to submit a specimen of breath or blood as demonstrated by DPS's statutory warning form.

(4) After being asked to submit a specimen of breath or blood, Bond refused, as demonstrated by the peace officer's signed statement on the warning form.

Bond filed a petition for judicial review of Judge Cooper's order in the county court of Cooke County, Texas. *See* TEX. TRANSP. CODE ANN. § 524.041 (Vernon Supp.1997). Because the county court judge was not an attorney, the case was transferred to the 235th District Court of Cooke County. *See id.* In the district court proceeding, Bond alleged that there was insufficient evidence to support the administrative court's findings of fact because the testimony regarding reasonable suspicion and probable cause was based on Officer McClinton's hearsay statements. Bond alleged that the admission of this testimony violated his right to confrontation under the Sixth Amendment to the United States Constitution as well as article 1, section 10 of the Texas Constitution. Finally, he argued that he did not refuse to give a blood or breath specimen because he blew into the intoximeter at the scene of the stop. The DPS answered Bond's claims by filing a plea to the jurisdiction and a general denial.

On September 17, 1996, the district court issued an order reversing the administrative law judge's decision on the following grounds:

(1) Trooper Ivie did not forward to DPS a copy of the Notice of Suspension or Denial and the Refusal Report within five days after Bond's arrest, as required under section 724.032 of the Transportation Code;

(2) There was not credible evidence to support issues one or two in section 724.042 of the Transportation Code in that the only evidence produced at the administrative hearing was hearsay, which Bond's attorney properly and timely objected to;

(3) Bond gave a breath specimen at the scene of his arrest after he was under arrest. That breath specimen was taken under the provisions of section 724.016 of the Transportation Code;

(4) Section 724.016 does not provide that the breath specimen given must be given into an Intoxilyzer 5000 instrument.

DPS brings this appeal from this order.

### Jurisdiction of the District Court

■ In point one, DPS asserts that because Bond did not properly serve DPS with

his petition for appeal, the district court erred as a matter of law when it held that it had subject matter jurisdiction over the appeal. The administrative law judge's suspension order set forth Bond's appeal rights as well as the address to which Bond could send his notice of appeal. DPS argues that because its address changed, the address listed on the suspension order was incorrect and should not have been used by Bond in giving his notice of appeal. We disagree. Bond complied with the order by sending his notice of appeal via certified mail and with a copy of the petition to the address given in the administrative order.[2] Therefore, the district court properly denied DPS's plea to the jurisdiction. DPS's first point is overruled.

## Standard of Review

■ A person whose driver's license is suspended following an administrative hearing is entitled to judicial review of the decision. *See* TEX. TRANSP. CODE ANN. § 524.041. Judicial review is based on the substantial evidence rule. *See* TEX. TRANSP. CODE ANN. § 524.002(b) (Vernon Supp.1997); TEX. GOV'T CODE ANN. § 2001.174 (Vernon Supp.1997). "Substantial evidence" means that, on the evidence as a whole, reasonable minds could have reached the same conclusion as that of the administrative agency. *See Texas State Bd. of Dental Examiners v. Sizemore,* 759 S.W.2d 114, 116 (Tex.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *McKinley Iron Works, Inc. v. Texas Employment Comm'n,* 917 S.W.2d 468, 470 (Tex.App.—Fort Worth 1996, no writ).

■ At its core, the substantial evidence rule is a reasonableness or rational basis test. *See City of El Paso v. Public Util. Comm'n,* 883 S.W.2d 179, 185 (Tex.1994). Principles that guide the trial court's substantial evidence review include: (1) the court will hear and consider evidence to determine whether reasonable support for the agency's order exists, although the agency remains the primary fact finder, and the question for the trial court is strictly one of law; (2) the trial

court may not substitute its own judgment for that of the agency on controverted fact issues; (3) if the agency heard substantial evidence that would support either an affirmative or a negative finding, the trial court must allow the agency's order to stand, even if the trial court would have reached a different conclusion; (4) the trial court may not set aside the agency's ruling merely because of disputed or conflicting testimony; and (5) the trial court is concerned only with the reasonableness of the agency's order and not its correctness. *See Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984); *McKinley Iron Works,* 917 S.W.2d at 470.

■ Under these principles, if there was substantial evidence that supports the agency's ruling, the trial court must yield to the discretion that was exercised by the agency empowered by law to make that ruling. *See id.* Findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *City of El Paso,* 883 S.W.2d at 185.

## Reasonable Suspicion and Probable Cause

In setting aside the decision of the administrative law judge, the district court determined that there was not substantial evidence that reasonable suspicion to stop Bond existed or that probable cause to arrest him existed, since the only evidence produced at the administrative hearing in support of these issues was based on hearsay. In points two and three, DPS contends the district court erred as a matter of law in holding that the only evidence of reasonable suspicion or probable cause was hearsay.

■ DPS correctly argues that Ivie's oral and documentary statements regarding what he had been told by Officer McClinton concerning her initial stop of Bond were admissible under the public records exception to the hearsay rule. *See* TEX.R. CIV. EVID. 803(8).

---

2. Because we reverse the district court's ruling reinstating Bond's driver's license, we do not address DPS's argument under point one, except

to note that DPS stated during oral argument that it received Bond's petition.

Texas Rule of Civil Evidence 803(8) provides that the following are not excluded as hearsay:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or (C) factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness.

TEX.R. CIV. EVID. 803(8). Rule 803(8) specifically states that a public record or report may be in any form. *Id.* The information conveyed to Ivie by McClinton concerning her observations of Bond's driving and the reasons why she stopped him were made under a "duty imposed by law as to which matters there was a duty to report." *Porter v. Texas Dep't of Pub. Safety*, 712 S.W.2d 263, 264–65 (Tex.App.—San Antonio 1986, no writ) (holding that the officer's sworn report was admissible as an exception to hearsay under Rule 803(8)).

Because McClinton's report would be admissible as a hearsay exception under Rule 803(8), the statements she made to Ivie are admissible as incorporated in his report, which was also made pursuant to a duty imposed by law. The written version of the report was admitted into evidence. This report was admissible as a certified copy of a public record under Rules 803(8) and 902(4) of the Texas Rules of Civil Evidence and was properly admitted over Bond's hearsay objection. *See Clement v. Tex. Dep't of Pub. Safety*, 726 S.W.2d 579, 581 (Tex.App.—Fort Worth 1986, no writ); *Porter*, 712 S.W.2d at 264–65.

In addition, regardless of the report's hearsay status, Bond has waived his objection to its admission by offering it into evidence himself. Bond objected to the admission of the report on grounds that it was based on hearsay and therefore did not establish probable cause. Judge Cooper overruled Bond's objection and admitted the report into evidence, and DPS rested. When Judge Cooper asked Bond's attorney if he had anything else to submit, the following exchange occurred:

[DEFENSE COUNSEL]: Your Honor, that is all that I have to offer. I do want to offer the Probable Cause Affidavit. I assume that is what she is offering. I don't know. But it shows that he did blow on an Intoximeter; he did take a breath test. And therefore, there [were] no grounds for—to say that he refused.

JUDGE COOPER: Are we speaking of a Probable Cause Affidavit prepared by Dudley S. Ivie?

[DEFENSE COUNSEL]: Right. We want to introduce this Dudley S. Ivie. That is the only affidavit you have got?

JUDGE COOPER: That has been admitted as Department's Exhibit Number 2.

[DEFENSE COUNSEL]: Okay. Well, I want to admit the Probable Cause Affidavit ... where Dudley Ivie signed it on the 30th of April, 1996.

JUDGE COOPER: That is the same one I am referring to that is Department's Exhibit Number 2.

A party on appeal cannot complain of the admission of improper evidence offered by the other side when he, himself, introduced the same evidence or similar evidence. *See McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *see also Haney v. Purcell Co., Inc.*, 796 S.W.2d 782, 788 (Tex.App.—Houston [1st Dist.] 1990, writ denied). The administrative record clearly shows that Bond introduced the very same evidence he earlier objected to; thus he presents nothing for our review. We sustain DPS's second and third points.

### Implied Consent

In point five, DPS contends that the district court erred as a matter of law when it held that Bond had provided a specimen in compliance with chapter 724 of the Texas Transportation Code. DPS argues that the provisions of chapter 724 did not apply in the pre-arrest phase where Bond took the portable breath test; they only applied after Bond had been placed under arrest for DWI. We agree. We begin by examining the implied

consent provisions of the Texas Transportation Code.

"Implied Consent" means that if a person is arrested for an offense arising from operating a motor vehicle while intoxicated, that person is deemed to have consented to the taking of one or more breath or blood specimens for analysis to determine alcohol concentration. *See* TEX. TRANSP. CODE ANN. § 724.011 (Vernon Supp.1997). The provisions of the implied consent law apply "only to a person *arrested* for an offense involving the operation of a motor vehicle." TEX. TRANSP. CODE ANN. § 724.002 (Vernon Supp. 1997) (emphasis added); *see also Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.).

Although Bond provided a breath specimen shortly after Ivie and Pierce arrived at the scene, Ivie testified that at the time Bond submitted to the intoximeter test, he was not under arrest. It was only after Bond failed several field sobriety tests, including the intoximeter test, that Ivie arrested him and drove him to the Cooke County Sheriff's Department. There Ivie read Bond the form that explained to Bond that he was under arrest for DWI; that a specimen was being requested; that if a specimen was refused, his driver's license would be suspended; that he was entitled to a hearing on suspension; and that he had been orally advised of the consequences of a refusal to give a specimen or of a specimen that registered an alcohol concentration above a certain point. Bond refused to sign the form and refused to provide a specimen.

These facts demonstrate that the breath specimen Bond provided at the scene of the stop and before his arrest was given as one of several field sobriety tests used to determine probable cause. Ivie testified on cross-examination that the intoximeter is "used in the development of probable cause." Ivie used the intoximeter merely as an indicator of intoxication and not one of alcohol concentration. *See Fernandez v. State*, 915 S.W.2d 572, 576 (Tex.App.—San Antonio 1996, no pet.) (passive alcohol sensor test was not administered for the purpose of alcohol concentration but, rather, was given as one of several field sobriety tests as an indicator of intoxication). These facts also show that Bond refused to provide a specimen when one was requested by a peace officer under the provisions of chapter 724 and after he had received the required statutory warnings.

Additionally, even if compliance with the intoximeter test constituted the giving of a specimen under chapter 724, Bond could not have refused a second specimen without risking the suspension of his license. *See* TEX. TRANSP. CODE ANN. §§ 724.011, 724.012 (Vernon Supp.1997); *State v. Gonzales*, 850 S.W.2d 672, 674 (Tex.App.—San Antonio 1993, pet. ref'd) (holding that even if the breath test has been completed, the State would still be able to use the "implied consent" found in the statutory predecessor to sections 724.011 and 724.012 to secure consent from an arrestee for a successive blood test). The implied consent law expressly states that one or more specimens may be requested and taken. *See id.*

Despite the uncontroverted facts of this case and the provisions of the implied consent law, the district court concluded that Bond provided a specimen after his arrest and in compliance with section 724.016 of the Texas Transportation Code. Based on the administrative record and chapter 724 of the Texas Transportation Code, the district court erred in finding that Bond had complied with the provisions of the implied consent law; in fact, Bond refused to provide the breath specimen requested by Ivie. Accordingly, we sustain DPS's fifth point.

### Failure to Forward Documents to the DPS in a Timely Manner

In point four, DPS asserts that the district court erred in holding that DPS is required to prove that the arresting state trooper complied with section 724.032(c) of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.032(c) (Vernon Supp.1997). Bond argued for the first time in the district court that the administrative law judge should have reinstated his license because the required documents were not filed within five business days as required by section 724.032(c). During the administrative hearing, Bond did not object to the admission of

**448**

the officer's testimony or the documentary exhibits on that basis.

■ The only objection Bond made was that the testimony and exhibits were based on hearsay, and therefore no probable cause existed to arrest him. The complaint on appeal must be the same as that presented in the trial court. *See Rogers v. Stell,* 835 S.W.2d 100, 101 (Tex.1992); *Mixon v. National Union Fire Ins. Co.,* 806 S.W.2d 332, 334 (Tex.App.—Fort Worth 1991, writ denied). Because Bond's objections at the administrative hearing were based solely on hearsay grounds, and he raises the failure to meet the forwarding requirements of section 724.032(c) for the first time on appeal, he has waived any error caused by Ivie's untimely forwarding of the required documents. Accordingly, we sustain DPS's fourth point.

### Conclusion

Because we sustain DPS's points two through five, we reverse the district court's order and render judgment affirming the administrative law judge's order suspending Bond's driver's license.